UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

   vs.                            No. 13-CR-1877 WJ

JAMIE ESTRADA,

       Defendant.

**SENTENCING MEMORANDUM OF JAMIE ESTRADA**

Defendant Jamie Estrada, through counsel, submits this sentencing memorandum in the hope that it will assist the Court in crafting a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). As we explain below, a sentence of probation is sufficient to accomplish the statutory goals of sentencing. Imprisoning Mr. Estrada would be greater than necessary for many reasons, including (A) his extraordinarily good character and distinguished history of public service; (B) the harsh consequences he has already endured as a result of his conduct and convictions and that he will continue to endure for the rest of his life; and (C) the critical roles he plays in caring for his acutely ill brother and elderly and infirm father. Our proposed sentence is consistent with the fundamental principle that sentencing courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

**FACTUAL BACKGROUND**

**I.      Mr. Estrada's early years.**

Jamie Estrada was born in Las Cruces, New Mexico, in 1972.  His father worked for the United States Postal Service, and his mother was a bookkeeper, though she stayed at home when Mr. Estrada was a child.  He had a happy childhood.  His parents provided for him and loved him.

Starting when he was a child, he was deeply committed to his immediate family, to his extended family, and to his friends.  People who first met Mr. Estrada in middle school and who have remained his friends ever since describe him as being so close to them and so loyal to them that he was "like family."  (Ex. A, Letter from Rosalba Baker; Ex. B, Letter from Angelica Iglesias Rubio.)  Having known Mr. Estrada for many years, his childhood friends have had many occasions to observe his kindness, generosity, loyalty, honor, integrity, and trustworthiness.  (Ex. A, Letter from Rosalba Baker; Ex. B, Letter from Angelica Iglesias Rubio; Ex. D, Letter from Jeff Bennett; Ex. E, Letter from Jennifer Dolan; Ex. F, Letter from Janet Woods Maza.)  Angelica Iglesias Rubio, who has known Mr. Estrada for three decades, writes that "in order for an acquaintance to become a friend, a true friend, they have to measure up to the Jamie Estrada standard."  (Ex. B, Letter from Angelica Iglesias Rubio.)

**II.     Mr. Estrada's education and accomplishments in the private sector.**

While attending college at New Mexico State University (NMSU) and working at Citizens Bank of New Mexico, Mr. Estrada's strong character, intelligence, work ethic, professionalism, and worthy career goals impressed those around him.  (Ex. D, Letter from Jeff Bennett.)  Chad Weaver, who was in a business fraternity with Mr. Estrada, noted that he was "very active with our fraternity," holding executive positions.  (Ex. G, Letter from Chad

Weaver.)  He also organized and participated in numerous professional and community service projects.  (Id.)  Karen E. Smit, who was also in the business fraternity, "saw first hand how he excelled in his studies, never got in any trouble, and was always eager to help others."  (Ex. H, Letter from Karen E. Smit.)  She observes that "[h]e has always been passionate about his home state and how he could help make New Mexico a better place."  (Id.)  He wanted a career in public service because he thought he could make a positive difference.  (Ex. I, Letter from Jayne Bradley.)

In 1995 Mr. Estrada earned two bachelor's degrees—one in economics and another in business administration.  (Ex. J, NMSU diplomas.)  He received both degrees with honors. (Id.)  He had a 3.9 grade point average.  (PSR, ¶ 64.)

Immediately after college he began working at Intel Corporation, where he stayed for over nine years—first in Rio Rancho, New Mexico, and later in Washington, D.C. His actions proved him an excellent colleague, leader, friend, and mentor.  (Ex. K, Letter from Tina Volzer; Ex. L, Letter from Ryan Moynihan; Ex. M, Letter from Jenna Lapaglia.)  He was "a great coach and mentor" to Ryan Moynihan, who emphasizes that Mr. Estrada was "instrumental in my career progression and a great friend from the day I met him."  (Ex. L, Letter from Ryan Moynihan.)  Mr. Moynihan is now a vice president for a Fortune 500 corporation.  (Id.)  Mr. Estrada demonstrated a "solid work ethic" and "a strong drive to do the right thing."  (Ex. N, Letter from Marjorie E. Moring.)  A colleague who worked alongside Mr. Estrada for over six years at Intel and who Mr. Estrada mentored while she was in college observes that he was professional, ethical, hard working, and committed to giving back to the community.  (Ex. H, Letter from Karen E. Smit.)  Intel formally recognized Mr. Estrada's performance several times. (Ex. O, Intel plaques.)  Intel rewarded him with management positions.  (Ex. P, Letter from

Larry Sur.)  He worked in both Finance Department and the Governmental Affairs Group, "which valued him so much they continued to let him work during his schooling at Georgetown."  (Id.)

In 2004, while working for Intel as a financial manager and policy analyst, he earned a Master's of Business Administration from Georgetown University.  (Ex. Q, Georgetown diploma.)  He received the Dean's Citation, an honor recognizing his "outstanding contributions and services" to the MBA Program, as well as the "high esteem" he "enjoyed in the eyes of the administration, faculty, and fellow classmates."  (Ex. R, Dean's Citation Certificate from Georgetown University.)

**III.    Mr. Estrada's role in the reelection campaign of President George W. Bush.**

In 2004 Mr. Estrada worked for the Presidential Campaign of George W. Bush.  He served successfully as a New Mexico field director.  Mark B. Murphy, President of Strata Production Company, recruited Mr. Estrada "to spearhead the Campaign's activities in San Juan County."  Mr. Murphy writes that Mr. Estrada

> was by far the most diligent, hard working and ultimately successful of our State leaders.  Much of the credit for the President's win in NM that year is directly attributable to Jamie's efforts.

(Ex. S, Letter from Mark B. Murphy.)  The victory in our state played a key role in President Bush's reelection.

**IV.    Mr. Estrada's service to the United States through the Bush Administration.**

Mr. Estrada was appointed to two positions in the Bush Administration's Department of Commerce, where he served from 2005 through 2009.  He began as Director of the Office of Technology and Electronic Commerce for the International Trade Administration.  (Ex. T, Department of Commerce Certificate of Recognition.)  This was "a newly-created political

position," and some of the career civil service staff were skeptical "about his agenda and ability to do the job well. He quickly turned those skeptics with his knowledge of the industry, . . . his energy and enthusiasm for the job, and his clear desire to make a difference on behalf of the industries we served." (Ex. U, Letter from Tu-Trang Phan.)

Within a year he was appointed Deputy Assistant Secretary of Manufacturing in the Department of Commerce. (Ex. V, U.S. Department of Commerce Appointment; PSR, ¶ 71.) In that position, he managed multiple offices and was responsible for supervising nearly 250 employees. (Ex. U, Letter from Tu-Trang Phan; Ex. W, letter from Chris Walters; Ex. X, Letter from Patricia Hernan.)

Charles Skuba, who is now a professor at Georgetown University's McDonough School of Business, worked with Mr. Estrada in the Department of Commerce. (Ex. Y, Letter from Professor Skuba.) Professor Skuba describes Mr. Estrada as "a person of high moral character and civic responsibility," who was "loyal, intelligent, and energetic" and "an excellent public servant." (Id.) Professor Skuba recognized Mr. Estrada as "a positive leader and manager," and he noticed that Mr. Estrada "took pride in helping to shape and execute the policy initiatives of the Bush Administration to stimulate economic growth, create jobs, and increase American competitiveness in manufacturing." (Id.) Indeed, the Department of Commerce issued a Certificate of Appreciation to Mr. Estrada for his "significant contributions to enhance U.S. Competitiveness for the Manufacturing Sector in both Domestic and International Markets." (Ex. Z, Certificate of Appreciation.)

Another colleague, Chris Walters, found that Mr. Estrada was "industrious, hard working, caring, and of the highest moral and ethical standards." (Ex. W, letter from Chris Walters; see also Ex. AA, Letter from Jenifer Sarver (a "trustworthy, reliable colleague" with a strong work

ethic).)  Mr. Walters notes that Mr. Estrada "took the public's trust very seriously and was always careful to follow procedures, guidelines and rules—and he made this effort a priority for everyone else as well."  (Ex. W, letter from Chris Walters.)  He "worked tirelessly to meet as many people as he could from the industries he represented to truly understand their issues, concerns and what the Department could do to help."  (Id.)

Patricia Hernan, whose successful career as a civil servant spanned 22 years, "had her share of experiences with political appointees who come and go in federal government."  (Ex. X, Letter from Patricia Hernan.)  Ms. Hernan recognized that Mr. Estrada, unlike many political appointees, was "a real worker" and "a true team player."  (Id.)  She writes,

> Jamie was not the 'normal' political appointee who thought of themselves and couldn't wait for their next free flight somewhere with no solid accomplishments to show.  Jamie believed in performance measures and results for the American industry and economy and shied away from using taxpayer's dollars to fund . . . useless and/or wasteful products, services, or trips.

(Id.)  His commitment to fulfilling his promise to the Bush Administration and the United States showed "true character" and "patriotism."  (Id.; see also Ex. CCC, Letter from Ruben Smith.)

Even with his extremely busy schedule and many important responsibilities, he was patient and generous with his colleagues.  Colleague Chris Walters observes that Mr. Estrada "viewed his staff as extensions of his family—and we would not have wanted to work for anyone else."  (Ex. W, letter from Chris Walters.)  He had an "open door policy," "treated all those who worked under him fairly," and was "patient" and "understanding."  (Id.)  He was an advocate for his staff and "cared immensely about people and how they felt about their contributions, their jobs, and their professional path within our organization."  (Ex. U, Letter from Tu-Trang Phan; Ex. X, Letter from Patricia Hernan.)  Youlanda Brown, who was Mr. Estrada's administrative assistant, describes him as "one of the best supervisors I have ever had." (Ex. BB, Letter from

Youlanda Brown.)

Even in Washington, D.C., Mr. Estrada demonstrated his commitment to his fellow New Mexicans by serving as President of the New Mexico State Society, "a non-political society for New Mexicans who have relocated to the Washington, D.C. area." (Ex. CC, Letter from Adam Alvarez; see also Ex. DD, Letter from Selma Sierra, Ex. MMM, Letter from Mindy McLaughlin.) He was "very kind to newcomers . . . and offered himself and his wife for any assistance that one may need." (Id.) He also "planned fundraisers for charities and community service activities to benefit the less fortunate." (Id.)

While working for the Department of Commerce, Mr. Estrada obtained a security clearance. One of his references was Special Agent Jerry Hanafin of the FBI, who has since retired from the FBI but who still works in law enforcement. (Ex. KKK, Letter from Jerry and Tracy Hanafin.) Mr. Hanafin writes that he told the background investigator, "as I still believe today, Jamie is of high moral character and integrity." (Id.)

**V.      Mr. Estrada's return to New Mexico.**

Mr. Estrada's mother became very ill in 2009 and passed away in 2010. (PSR, ¶ 52.) She had cirrhosis, though she did not drink alcohol. Putting family first, Mr. Estrada returned to New Mexico to care for his mother. (Ex. U, Letter from Tu-Trang Phan.) She was in the hospital for approximately four months. (Ex. EE, Letter from Erlinda Moreno.) Debra Marquez writes that she had "never seen a son be there for his mother in need up to her last breath. He worked with his family so that someone was with her every second of the day and night—it takes an extremely special person to do that." (Ex. FF, Letter from Debra Marquez; Ex. GG, Letter from Eloisa Iglesias; Ex. B, Angelica Iglesias Rubio.) Erlinda Moreno writes, "He was always at her bedside waiting for the doctors to come in with medical results. . . . It brought tears to my eyes

knowing the devotion Jamie had to his mother, even lovingly and gently washing her face and hands; the simple gesture showed what love he had." (Ex. EE, Letter from Erlinda Moreno.)

It was also in 2009 that Mr. Estrada became the campaign manager for Susana Martinez's gubernatorial campaign. Despite the many hours he spent caring for his mother, he still worked long hours for the campaign, sometimes even in the hospital at his mother's bedside. In December of 2009, Mr. Estrada left the Martinez campaign to begin his own campaign for a seat on the New Mexico Public Regulation Commission.[1]

After the election, Mr. Estrada started his own company, Global Growth Strategies, an international trade consultancy. He also wrote several articles about international trade and the economy, focusing on how to improve the economy in New Mexico and the rest of the United States. The *Albuquerque Journal* published these articles in 2010 and 2011. (Ex. II, Jamie P. Estrada, Jaunts to Cuba Don't Net Trade, Albuquerque Journal, 9/08/10; Ex. JJ, Jamie P. Estrada, Free Trade Creates N.M. Jobs, Albuquerque Journal, 8/10/11; Ex. KK, Jamie P. Estrada, China Bashing Won't Sell Pecans, Albuquerque Journal, 1/23/11.)

He was a frequent panelist on the Public Broadcasting Station television program New Mexico In Focus, where, yet again, he impressed those who worked alongside him. (Ex. LL, Letter from Javier Benavidez; Ex. MM, Letter from Laura E. Sanchez-Rivet; Ex. EEE, Letter from Sophie Martin.) Javier Benavidez found Mr. Estrada to be "one of the most genuine public servants that I have met in our state. His intelligence, compassion, and humility are all attributes that I deeply appreciate." (Ex. LL, Letter from Javier Benavidez.) Mr. Benavidez adds, "He loves the people of New Mexico and operates with authentic intentions of resolving our state's

---

[1] Mr. Estrada and Governor Martinez provide different accounts of the circumstances of Mr. Estrada's departure and whether the departure was voluntary. The Court need not resolve this dispute. Mr. Estrada has admitted that after he left the campaign, he did not have the authority to control the domain name or associated email addresses. (Doc. 79, Plea Agreement, p. 4, ¶ 8(b).)

deepest struggles." (Id.) Sophie Martin writes that Mr. Estrada "is a passionate advocate for New Mexico, and his heart is clearly in the betterment of the state." (Ex. EEE, Letter from Sophie Martin.)

In 2011, New Mexico Business Weekly recognized Mr. Estrada's accomplishments and potential. It named Mr. Estrada one of its "Forty Under Forty." (Ex. HH, 40 Under Forty Class of 2011, New Mexico Business Weekly, 7/15/11.)

Mr. Estrada has also worked to improve New Mexico and the lives of those around him in other ways. Patricia Houston met Mr. Estrada while both of them were volunteering at Republican Party Headquarters in Los Lunas. She writes that Mr. Estrada "impressed me by his willingness to come in & perform whatever was necessary to accomplish the task," including washing dishes, emptying waste baskets, and "even doing what everybody else refused to do— clean the bathroom which meant scrubbing the toilet!" (Ex. NN, Letter from Patricia Houston.) She writes that he was "willing to go the extra mile to get the job done." (Id.) For example, one evening, after Mr. Estrada had worked a full day in Albuquerque, he came to headquarters to work on a project with a deadline. (Id.) Ms. Houston writes that "everyone else went home," but Mr. Estrada stayed "to the very end," not once "comment[ing] how we were the only ones left[.]" (Id.) Mr. Estrada was also "very instrumental in helping . . . revive an extinct organization for Republican women in Valencia County." (Ex. OO, Letter from Rowena Tachias and Lt. Col. Michael Tachias, US Army (Ret.).)

He is also involved in faith-based activities. (Ex. UU, Letter from Kristina Estrada.) These include volunteering for the Finance Ministry, which gives unemployed people guidance and feedback on their resumes. (Id.) He and his wife are also sponsoring a child in Compassion International, "a child advocacy ministry that releases children from spiritual, social and physical

poverty and enables them to become responsible, fulfilled Christian adults[.]"  (Id.)

Mr. Estrada volunteered for Animal Humane New Mexico, serving on its Board of Directors.  (Ex. PP, Letter from Heather N. Wade; Ex. QQ, Letter from Marci Blaze.)  A fellow member of the board, Marci Blaze, writes,

> Jamie's commitment to a good that extends beyond his personal interest, his willingness to volunteer his time and expertise to a worthy cause, and his strong alignment with the needs of his community, not to mention his personal devotion to family (both human and canine) are all the attributes that have compelled me to continue our friendship even after our work together on the AHNM Board ended.

(Ex. QQ, Letter from Marci Blaze.)  As with his political work, Mr. Estrada does not leave the hands-on work to others.  (Ex. EE, Letter from Erlinda Moreno.)  He rescues stray dogs and works to locate their owners, and he collects towels and blankets for the animal shelter in Valencia County.  (Id.; see also Ex. LLL, Letter from Lee Matthews and Charles A. Huffman; Ex. WWW, Letter from Dawn Moore.)

## VI.  The offenses.

In July of 2011 Mr. Estrada learned that the registration for the domain susana2010.com had expired, and he suspected that the campaign did not have the username and password needed to renew the domain.  As described in detail in the plea agreement (Doc.79), he then decided to renew the registration for the domain, which allowed him to receive emails sent to addresses associated with the domain.   He received emails for several months and eventually gave the emails to Governor Martinez' political opponents.  When he gave did so, he understood that the Governor's opponents would disseminate certain emails, though he never suspected that anyone would make all or even a large number of the emails available to the public.

Mr. Estrada's motives for obtaining and sharing the emails were mixed.  He felt used and betrayed by Governor Martinez.  But he also believed that the emails would reveal that Governor

Martinez or members of her administration were involved in unethical and possibly even illegal conduct. In any event, he knows there is no excuse for his own actions. Indeed, he is publicly acknowledging it:

> It was wrong to obtain emails that were not addressed to me, regardless of my reasons for doing so. Indeed, obtaining these emails and later sharing them represented serious lapses of ethics and judgment.

(PSR, ¶ 28.) He "apologize[s] for and regret[s] the invasions of privacy and any other harm that resulted." (Id.)

When FBI agents executed a search warrant at his home early one morning, they asked him questions about whether he was involved in obtaining the emails. He gave false responses. He has also fully accepted responsibility for this. (PSR, ¶ 28.)

Mr. Estrada's offenses are completely out of character, and they are inconsistent with his history of honorable public service. Jeff Bennett, who has known Mr. Estrada for 26 years, describes what the people who know him best have recognized. "[T]he transgressions for which the Court now considers punishment, . . .which I do not mean in any way to condone, are a solitary mark on a life lead otherwise as a strong example of what we could most hope from our citizens, our neighbors and our friends." (Ex. D, Letter from Jeff Bennett; see also Ex. NNN, Letter from Sharon Whelan.) Mark D'Antonio, who is the sitting District Attorney in Las Cruces and a former federal prosecutor, writes, "Jamie is a good and honest man who made a very serious error." (Ex. HHH, Letter from Mark D'Antonio; see also Ex. DDD, Letter from Diane Smith; Ex. III, Letter from Thomas Tinnin.)

Mr. Estrada no longer believes, as he did at the time of his offenses, that his desired ends justified his means. He is, as a friend explains, "truly remorseful[.]" (Ex. W, Letter from Chris Walters.) Michael Riojas and Carlos Moreno write, "Jamie has been candid with us about the

circumstances of his case and we believe he is truly remorseful and despondent about his actions[.]" (Ex. SS, Letter from Michael Riojas and Carlos Moreno.) Eloisa Iglesias, who has known Mr. Estrada for nearly thirty years, has recognized that "he has learned from this experience, has grown as a person." (Ex. GG, Letter from Eloisa Iglesias; <u>see</u> <u>also</u> Ex. TT, Letter from Elaine Cristler; Ex. E, Letter from Jennifer Dolan; Ex. A, Letter from Rosalba Baker.) Mark Murphy knows that "Jamie has made some serious mistakes, but Mr. Murphy has "no doubt . . . that he recognizes these mistakes and deeply regrets them." (Ex. S, Letter from Mark Murphy.)

Mr. Estrada's wife, Kristina, writes, "I have seen the transformation of Jamie for the better and know from our daily discussions and prayer, he is committed to being a better servant, husband, son, brother, friend, and citizen." (Ex. UU, Letter from Kristina Estrada.) During this difficult time, he has found guidance in Romans 5:3-4, which states, in part, "[W]e also rejoice in our sufferings, because we know that suffering produces perseverance; perseverance, character; and character, hope." (Ex. UU Letter from Kristina Estrada.) Mr. Estrada "has embraced these trials of suffering and has used [them] to refine himself in the most positive ways." (<u>Id.</u>)

## VII. Mr. Estrada's critical roles in the care of his brother and father.

In the time that has passed since he was indicted, Mr. Estrada's father and older brother have suffered serious health problems. In 2013 and 2014, Mr. Estrada's 81-year-old father Ernest has had four separate surgeries for spine and prostate problems. (Ex. VV, Letter from Ernest Estrada.) One of the surgeries occurred in Lubbock, Texas, and Mr. Estrada stayed there for three weeks to assist his father with a "recovery that was nothing less than brutal." (<u>Id.</u>) Mr. Estrada has researched medical providers and conditions, coordinated his father's care, accompanied him to medical visits in three states, and assisted him with medical decision-

making.  (Id.)  Mr. Estrada's efforts have been essential to his father's care and wellbeing.  (Id.)

Unfortunately, although Mr. Estrada's father's health has improved somewhat, it is still not good.  Two of the surgeries failed and damaged his spinal cord.  He cannot walk without severe pain and help.  (Id.)  His hands are permanently numb.  (Id.)

Mr. Estrada has also been essential to the care of his 58-year-old brother Stephen, who was diagnosed with end-stage liver disease in February 2013.  This is the same mysterious disease that took the life of Mr. Estrada's mother.

Stephen also suffers from a disabling condition associated with liver disease called hepatic encephalopathy, which impairs brain function.  (Ex. VV, Letter from Ernest Estrada.) The Estrada family discovered that Stephen was suffering this condition in a frightening way. On March 21, the Estrada family could not contact Stephen, who was living in Houston at the time.  Mr. Estrada feared the worst and asked the police to break into Stephen's apartment.  (Id.) The police found Stephen "alive but unable to communicate."  (Id.)

The brain condition has made it very difficult for Stephen to make his own medical decisions.  Mr. Estrada has been coordinating all of Stephen's medical care.  (Ex. EE, Letter from Erlinda Moreno.)  This is a very complex, demanding task because of the serious ongoing health problems his brother is having, the number of doctors involved, and the various locations where the health care providers are located (Las Cruces, El Paso, Houston, and Phoenix). Fortunately, Mr. Estrada is extraordinarily well organized and has a deep understanding of Stephen's health problems.  In fact, Mr. Estrada's knowledge of his brother's medical condition is so extensive that during one of Stephen's hospitalizations, the emergency room doctor confused Mr. Estrada for one of the physicians caring for Stephen.  (Ex. VV, Letter from Ernest Estrada.)

Because Stephen could not continue to live alone, Mr. Estrada helped him move to Las Cruces. He also helped him apply for disability payments through Social Security, which he is now receiving.

Unfortunately, New Mexico does not have a liver transplant program. So Mr. Estrada took the lead in helping Stephen through the transplant evaluation process at clinics in both Houston and Phoenix. To qualify for a transplant, Stephen must have a family member who is firmly committed to being responsible for his health after the transplant. (Ex. VV, Letter from Ernest Estrada; Ex. UU, Letter from Kristina Estrada.) Post-operative care involves administering up to 20 pills of anti-rejection drugs per day, spoon-feeding meals, taking care of bodily fluids, and attending medical appointments. (Ex. UU, Letter from Kristina Estrada.) Mr. Estrada is the only person who is able to perform these functions. (Ex. UU, Letter from Kristina Estrada; Ex. VV, Letter from Ernest Estrada; Ex. WW, Letter from Maria Kaltenbach.)

If Mr. Estrada is imprisoned and separated from his family, it will be impossible for him to provide critical care and support for his brother, who has a fatal illness, and for his father, who is also in poor health. (Exs. VV, Letter from Ernest Estrada; Ex. XX, Letter from Bernadette Granger; Ex. TTT, Letter from Maureen Sutton.) This will greatly increase the likelihood that Mr. Estrada's brother will die from his illness. In addition, he will be unable to provide important care for his elderly and infirm father.

Dr. Sunil Pai, who is one of the doctors treating Stephen and Ernest, writes that "Jamie has had a pivotal and primary role in ensuring that they have received good care." (Ex. YY, Letter from Sunil Pai, MD.) Because of their health conditions, "especially with his brother who is on the liver transplant list," Mr. Estrada's "role in continued daily care can not be understated, nor ignored." (Id.) His brother has had "many issues with comprehension and compliance and

thus Jamie has had to take care of him from moving him to New Mexico from Texas ensuring that he eats correctly and takes his medications daily." (Id.) Dr. Pai's "medical and expert opinion" is that "Jamie's father and more so his brother's health outcomes are directly dependent on whether Jamie can be allowed to continue his primary role as care giver." (Id.)

## VIII. Mr. Estrada's relationships with his family, friends, and wife.

Mr. Estrada's love for and commitment to his family, friends, and wife also demonstrate his good character. Mr. Estrada is, as his cousin Elaine Cristler recognized, "the backbone for his family." (Ex. TT, Letter from Elaine Cristler; see also Ex. BBB, Letter from Michael Diaz, Ex. WW, Letter from Maria Kaltenbach; Ex. JJJ, Letter from Judi Hammer; Ex. LLL, Letter from Lee Matthews and Charles A. Huffman.) His dedication to his family extends well beyond his blood relatives. Mr. Estrada's mother-in law, Erlinda Moreno, describes how Mr. Estrada "was my support system" when paramedics had to take her husband to the hospital by ambulance. (Ex. EE, Letter from Erlinda Moreno.) She writes, "Despite all that is going on with his father, brother, and this current legal situation that I know weighs on him so heavily—he still manages to check up on me daily." (Id.)

Mr. Estrada's many friends highlight that he is kind, caring, generous, and always willing to help them when they need it. Roger Rubio writes, "Jamie is a person who will go to the ends of the Earth for the people that he loves." (Ex. UUU, Letter from Roger Rubio; see also Ex. C, Letter from Jaime Iglesias; Ex. RR, Letter from Patty Pringle-Roberts; Ex. FFF, Letter from Ed Kaltenbach; Ex. PPP, Letter from Rosemary Fragoso; Ex. RRR, Letter from Edgar A. Rodriguez; Ex. QQQ, Letter from Aaron Moreno; Ex. VVV, Letter from Jason Smith.)

For example, he helped a couple who was having trouble formalizing the international adoption of their daughter. (Ex. RR, Letter from Patty Pringle-Roberts.) The child's mother,

Patty Pringle-Roberts, writes that Mr. Estrada assisted with the preparation of the documents that the government required and "was very generous with his time to help us navigate the system and help get our daughter her official United States citizenship." (Id.) The couple passed the documents Mr. Estrada prepared and what they learned from him on to other families, which "made their case work go through as smoothly as ours." (Id.)

Rosemary Fragoso describes Mr. Estrada as "my strength in the most vulnerable time in my life." (Ex. PPP, Letter from Rosemary Fragoso; see also Ex. VVV, Letter from Jason Smith.) Ms. Fragoso was "desperate to seek employment" but lacked experience organizing a resume. (Ex. PPP, Letter from Rosemary Fragoso.) Although Mr. Estrada and his wife were on vacation, he spent a great deal of time helping her prepare her resume and even search for job openings. (Id.; see also Ex. FFF, Letter from Ed Kaltenbach, Ex. QQQ, Letter from Aaron Moreno.) Her prospective employer was "impressed with her resume" and offered her a job as a cook at a nursing home. (Ex. PPP, Letter from Rosemary Fragoso.)

Mr. Estrada's wife of over ten years, Kristina Estrada, has known Mr. Estrada since they were both 12 years old. (Ex. UU, Letter from Kristina Estrada.) Ms. Estrada works for the Department of Defense as Branch Chief, working on intelligence that supports the work of our military. (Id.) She holds a security clearance and has worked in the past for the Central Intelligence Agency. (Id.) She writes that Mr. Estrada "is the real reason I am the person I am today." (Id.) She describes the many positive qualities that she has observed in Mr. Estrada over the past 30 years, including honor, integrity, dedication, generosity, and responsibility. (Id.)

## IX.     The collateral consequences of the charges and convictions.

Mr. Estrada has suffered and will continue to suffer tremendous collateral consequences as a result of his actions. After he was indicted in May of 2013, Mr. Estrada lost all of his

consulting work, and he has been unable to find any new work. He has been unemployed for the past 16 months. This has taken a heavy financial toll on Mr. Estrada and his wife.

Being unable to work has also weighed heavily on Mr. Estrada psychologically, as work is an important part of his identity. He has worked steadily since he was 19 years old, including working his way through college and graduate school. (Ex. UU, Letter from Kristina Estrada.)

Mr. Estrada's felony convictions have seriously harmed him. He has lost his right to vote—a right he deeply cherished. The convictions also rendered his longtime goal of a career in politics or public service impossible.

Mr. Estrada is ashamed of and humiliated by his conduct and the charges to which he has pled guilty. Unlike many defendants, Mr. Estrada's crimes have been widely publicized.

In addition, certain people whose emails were intercepted and distributed have filed a civil lawsuit against Mr. Estrada and others. They seek compensatory damages, punitive damages, attorneys' fees, and costs.

## SENTENCING ANALYSIS

Congress has directed each sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, as described in 18 U.S.C. § 3553(a), based on the specific facts of the case. This mandate of parsimony is an "overarching provision." Kimbrough v. United States, 552 U.S. 85, 101 (2007); see also United States v. Martinez-Barragan, 545 F.3d 894, 904 (10th Cir. 2008) ("When crafting a sentence, the district court must be guided by the 'parsimony principle.'"). The Court must not presume that a sentence within the advisory guideline range is appropriate. See Rita v. United States, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). Instead, the Court must "make an individualized

assessment based on the facts presented." <u>Gall v. United States</u>, 552 U.S. 38, 50 (2007). A sentence must be "based on § 3553(a) without any thumb on the scale favoring a guideline sentence." <u>United States v. Sachsenmaier</u>, 491 F.3d 680, 685 (7th Cir. 2007).

In Mr. Estrada's case, the government agrees with Mr. Estrada that the § 3553(a) factors warrant a sentence below the advisory guideline range.[2] The parties have entered a Rule 11(c)(1)(C) plea agreement that permits a sentence of probation or any term of imprisonment up to one year and one day. If the Court accepts the plea agreement, the issue will be whether a sentence of probation—coupled with the consequences that Mr. Estrada has already suffered and will suffer for the rest of his life—is sufficient to accomplish the goals of sentencing. We respectfully submit that the answer is yes for the reasons explained below.

**Probation and the collateral consequences of Mr. Estrada's convictions are sufficient to accomplish the goals of sentencing; a sentence of imprisonment is greater than necessary.**

The Court need not impose a sentence of imprisonment to achieve the goals of sentencing that Congress identified in § 3553(a). The requested sentence of probation "is sufficient but not greater than necessary" to achieve those goals because of (A) Mr. Estrada's extraordinarily good character and contributions to his local community, to New Mexico, and to the United States; (B) the harsh collateral consequences of Mr. Estrada's convictions; and (C) the critical role he plays in the care of his brother, who is suffering from end-stage liver disease, and his elderly and infirm father.

A.      **Mr. Estrada's extraordinarily strong character and history of public service warrant a sentence of probation and make imprisonment unnecessary.**

Mr. Estrada's offenses stand in stark contrast to the rest of his life. He does not have any criminal convictions or even any prior contact with law enforcement. He has instead been a

---

[2] Mr. Estrada has objected to certain Guidelines calculations. Because this is a Rule 11(c)(1)(C) plea agreement, we do not focus on the Guidelines calculations in this sentencing memorandum.

model of hard work, integrity, generosity, kindness, and commitment to serving our community, our state, and our country. Sixty-nine people have attested to these positive qualities and others. These people have known Mr. Estrada at every stage of his life, and they have had the opportunity to observe his actions in a wide variety of contexts. They recognize that Mr. Estrada:

- is deeply committed to his family;

- is a loyal, helpful, supportive friend;

- was a successful student who earned high marks and honors while working his way through college and graduate school;

- was a successful manager and mentor in a Fortune 500 company for nine years;

- served as an appointee for President George W. Bush, working hard to improve our nation's economy;

- has been an effective and dedicated Republican organizer and activist; and

- has given his time and money to assist those in need and serve his community

Placing the offenses in the context of Mr. Estrada's life as a whole, the Court should conclude that a sentence of imprisonment is greater than necessary.

Congress has recognized that each defendant's character and history have a bearing on what sentence is "sufficient but not greater than necessary." Section 3553(a). The Court is well aware that very few defendants appear at sentencing able to make any credible argument that their characters and histories warrant a lower sentence. Only a tiny fraction can make such an argument compellingly. We respectfully submit that Mr. Estrada has done so. Throughout his life his actions have demonstrated an extraordinarily broad array of positive character traits, and he has a distinguished history of public service. All of this weighs heavily in favor of a sentence

of probation rather than imprisonment.

**B. Imprisonment would be greater than unnecessary because of the extremely harsh collateral consequences of Mr. Estrada's convictions.**

Mr. Estrada has suffered extremely harsh collateral consequences as a result of his convictions, and he will continue to suffer such consequences for the rest of his life. The Court should consider those consequences when determining what sentence "is sufficient but not greater than necessary" to reflect the seriousness of the offense, promote respect for law, and provide just punishment and adequate deterrence. 18 U.S.C. § 3553(a)(2)(A) & (B). The United States Court of Appeals for the Tenth Circuit and sentencing courts have recognized that collateral consequences carry weight under § 3553(a). See United States v. Jones, 158 F.3d 492, 498 (10th Cir. 1998) (recognizing that Supreme Court approved "district court's consideration of collateral employment consequences in the decision to depart"); United States v. Vigil, 476 F. Supp. 2d 1231, 1315 (D.N.M. 2007) (variance based in part on "collateral consequences"); United States v. Pacheco-Soto, 386 F. Supp. 2d 1198, 1205–6 (D.N.M. 2005) (below-guideline sentence based in part on collateral consequences).

The collateral consequences of Mr. Estrada's conduct and convictions have been and will continue to be tremendous. The indictment abruptly ended the consulting work he was doing through his company. In addition, being a convicted felon prevents him from voting. It also makes it impossible for Mr. Estrada to have a career in politics or other government service. And it will be incredibly difficult for him to obtain employment in the private sector.

The reputational harm from his felony convictions is far greater than in the average case because of the large amount of media coverage. Every significant event in the case has been in the media. An Internet search for Mr. Estrada's reveals dozens of damaging articles. Mr. Estrada's guilty pleas are widely known in the political and government circles in which Mr.

Estrada once enjoyed an untarnished reputation as a rising star.

At the age of 41, Mr. Estrada must begin his career again. His actions have cost him the sterling credentials he worked so hard to accomplish in college, graduate school, business, and government. The many doors that were once open are now locked shut. His felony convictions will, of course, remain with him for the rest of his life.

The cost is not only financial and reputational. Having a career in public service was Mr. Estrada's longtime dream largely because he has always felt compelled to help others and has always found fulfillment when he has done so.

Mr. Estrada currently faces a civil suit filed by several people whose emails he intercepted. They seek compensatory damages, punitive damages, attorneys' fees, and costs.

A sentence of imprisonment is not necessary because his felony convictions and their consequences have already punished Mr. Estrada sufficiently and have already provided adequate deterrence. Considering that this is Mr. Estrada's first offense and that he has a strong character and distinguished history of service, probation is sufficient. Imprisoning Mr. Estrada would be unnecessarily punitive and would not advance the goals set out in § 3553(a).

### C. Mr. Estrada's family circumstances support the requested variance.

The physician who treats Mr. Estrada's brother and father has stated that imprisoning Mr. Estrada will increase the likelihood of poor health outcomes. (Ex. YY, Letter from Dr. Pai.) Mr. Estrada is the only person in a position to assist his brother in the long, complex process of receiving a liver transplant and recovering from such a transplant. Whether Mr. Estrada is on probation or in prison could determine whether his brother survives. If Mr. Estrada is not available to care for his brother after a transplant, his brother will no longer be eligible for a transplant, as Mr. Estrada is the only person available to provide the kind of intensive care and

support that is necessary.

There are many defendants whose negative histories or crimes outweigh medical circumstances like these, warranting a sentence of imprisonment. But we respectfully submit that Mr. Estrada is not such a defendant. Imprisoning Mr. Estrada is not necessary to achieve the purposes of sentencing. Mr. Estrada has already suffered many harsh consequences as a result of his conduct, and Mr. Estrada will continue to suffer those consequences for many years to come. Imprisoning him would add collateral consequences that are excessively harsh for offenses of this nature and for a defendant with such a distinguished history and strong character. Imprisonment would deprive Mr. Estrada's brother of the care and support he needs for a life-saving medical procedure. It would also deprive Mr. Estrada's father of much needed support and care. Viewed in the context of Mr. Estrada's life as a whole, his decisions to obtain other people's emails and to make false statements to the FBI do not warrant punishment of this nature in addition to the felony convictions and other adverse consequences.

## CONCLUSION

Mr. Estrada respectfully requests that the Court impose a sentence of probation because a sentence of imprisonment is greater than necessary.

Respectfully submitted,

s/ Zachary A. Ives
Zachary A. Ives
zach@ginlawfirm.com
Molly Schmidt-Nowara
molly@ginlawfirm.com
GARCIA IVES NOWARA
201 Third Street NW, Suite 480
Albuquerque, NM 87102
505.899.1030

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2014, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

s/ Zachary A. Ives
Zachary A. Ives